UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| PAUL W. STANFIELD and BARBARA J. STANFIELD, | : : : |
| Plaintiffs | : : : |
| vs. | : Civil Case No. 1:03-cv-231 : Magistrate Judge Carter |
| CHARLES G. JENKINS, SR. and, ERNEST R. McNABB, | : : : |
| Defendants | : : : |
| v. | : : |
| CHARLES LOVE, BROWN PETROLEUM COMPANY, LLC and CENTRAL OIL COMPANY, LLC. | : : : : |
| Third-Party Defendants | : |

MEMORANDUM

I. Introduction

Third-party defendants, Charles Love, Brown Petroleum Company, LLC (Brown Petroleum), and Central Oil Company, LLC (Central Oil) have moved to dismiss under Fed. R. Civ. P. 12(b)(6) Count II of the cross-claim filed against them by defendant/cross-plaintiff Charles G. Jenkins (Doc. No. 45). Count II of the cross-claim seeks indemnification from the Third Party Defendants for damages which may be awarded to plaintiffs Paul and Barbara Stanfield on the Stanfields' claim of negligent misrepresentation asserted against Jenkins. Jenkins also seeks indemnification against the Third Party Defendants for attorney's fees incurred by Jenkins in defending this action filed by the Stanfields against him. For the reasons

1

stated herein, the Third Party Defendants' motion to dismiss is DENIED.

## II. Background

This action arises from the sale of certain real estate in Jasper, Tennessee (the Property) on January 30, 1999, from Jenkins to the Stanfields. According to the plaintiffs, Jenkins misrepresented to plaintiffs that they were purchasing a tract of land with no environmental defects that would prevent financing and that this misrepresentation was a direct result of Jenkins' negligent failure to inspect the property before making such a representation (Plaintiffs' Verified Complaint ¶¶ 31-33). Plaintiffs further assert they relied on this representation from Jenkins when they decided to purchase the Property (Plaintiff's Verified Complaint ¶ 36).

In the late Fall of 2002, plaintiffs attempted to obtain financing for the Property (Plaintiffs' Verified Complaint ¶ 15). As part of this attempt, an inspection of the property was conducted and, as a result of this inspection, the plaintiffs discovered

> "significant and serious environmental problems with the land, which had begun occurring over the years prior to this conveyance of the land. The problems apparently stem from an adjacent gas station owned by Defendant McNabb, with underground gas storage tanks which leaked over the years into the subject property."

(Plaintiffs' Verified Complaint ¶ 15). As a result of this contamination, the plaintiffs have not been able to obtain financing for the Property, and Jenkins has commenced foreclosure on the Property with a foreclosure sale to take place, as of the filing of the complaint, on July 18, 2003 (Plaintiffs' Verified Complaint ¶ ¶ 15 & 17). The Stanfields' complaint alleged five causes of action against Jenkins: negligent failure to inspect the property, breach of implied warranty of habitability, breach of warranty, nuisance, and negligent misrepresentation. By order dated February 10, 2005, the Court granted summary judgment in favor of Jenkins on all these claims

2

except the Stanfields' claim for negligent misrepresentation. The Stanfields also allege claims against Ernest McNabb: negligence; nuisance; violations of the Underground Storage Tank Act, 42 U.S.C. § 6991 & 6991a-I and the Clean Water Act, 33 U.S.C. § 1251; and claims for specific performance and injunctive relief.

On March 15, 2004, McNabb filed a Third-Party Verified Complaint pursuant to Fed. R. Civ. P. 14(a) asserting claims against Brown Petroleum, Central Oil and Charles Love. This Third-Party complaint alleges in relevant part that 1) Charles Love was a truck driver employed by Brown Petroleum and/or Central Oil, 2) on March 24, 2000, while operating a tractor-trailer fuel truck and transferring fuel into Ernest McNabb's fuel tanks in the course and scope of his employment, Love negligently caused 50 gallons of unleaded gasoline to be spilled, 3) that any liability McNabb may have to the Stanfields arose because of this gasoline spill caused by Love on March 24, 2000, and that 4) Brown Petroleum and Central Oil are vicariously liable for Love's conduct (*See* McNabb's Third-Party Complaint). McNabb seeks damages from Love, Brown Petroleum, and Central Oil "for any amount of compensatory damages, and punitive damages assessed against him in favor of plaintiffs Paul and Barbara Stanfield and defendant Charles Jenkins Sr." and reasonable attorney's fees incurred in this action (McNabb Third-Party Complaint, p. 8).

Subsequently, Jenkins asserted a counterclaim for breach of contract against the Stanfields and cross-claims of negligence and for indemnification against McNabb. Jenkins has also asserted cross-claims against Love, Brown Petroleum, and Central Oil for negligence and indemnification (Jenkins' Amended Answer, Counterclaim, and Cross-Claims, Doc. No. 43). In Count I of his cross-claim against Love, Brown Petroleum, and Central Oil, Jenkins alleges that

Love, during the course and scope of his employment with Brown Petroleum and Central Oil, negligently failed to safely transfer gasoline from large trucks to McNabb's tanks thereby spilling gasoline on the ground and contaminating the Property. Jenkins further alleges that Brown Petroleum and Central Oil are vicariously liable to him for Love's negligent conduct. Count II of Jenkins' cross-claim against Love, Brown Petroleum, and Central Oil sets forth a claim for indemnification and is the subject of this motion.

Count II of Jenkins' Cross-Claim seeks recovery from Love, Brown Petroleum, and Central Oil for damages in the amount of damages awarded, if any, against Jenkins to the Stanfields, and attorney's fees and litigation expenses incurred by Jenkins in the Stanfields' action against him on "the theory of common law indemnity" (Jenkins' Amended Answer, Counterclaim, and Cross-Claims, p. 11).

### III. Discussion

*A. Standard of Review*

A motion to dismiss for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12 tests the factual sufficiency of the plaintiff's complaint; it does not test the strength of plaintiff's proof necessary to prove plaintiff's claim. *See Central States, Southeast and South West Areas Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 254 (6th Cir. 1997); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The Court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514-15 (6th Cir. 1999)*; Grindstaff v. Green*, 133 F.3d 416, 420 (6th Cir. 1998); *Meador*

4

*v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867 (1990).

*B. Analysis*

The Third Party Defendants assert Jenkins' Count II indemnity claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because Jenkins fails to assert a contractual relationship between the parties upon which indemnity could be based and Jenkins does not allege any statutory basis for indemnity. The Third Party Defendants also assert dismissal of the indemnity claim is appropriate because the only remaining claim of the Stanfields against Jenkins is negligent misrepresentation and there is no allegation the Third Party Defendants "had any participation in the realty transaction between Plaintiffs and Defendant Jenkins or likewise took part in any representation made by Defendant Jenkins to Plaintiffs" (Brief in Support of Third Party Defendants motion to dismiss at 3.)

Indeed, Jenkins has not alleged a contractual or statutory basis for indemnification nor has Jenkins alleged the Third Party Defendants were involved in the underlying realty transaction or the alleged negligent misrepresentation. However, Jenkins argues that a fair reading of his cross-claim against the Third Party Defendants reveals a well pleaded claim for implied right of indemnity under Tennessee common law.

In *Velsicol Chemical Corp. v. Chattanooga Coke & Chemicals Co.,* 543 S.W.2d 337, 339 (Tenn. 1976), the Tennessee Supreme Court explained the operation of an implied right of indemnity:

> Indemnity shifts the entire burden from one tortfeasor, who has been compelled to pay it, to the shoulders of another who should ultimately bear the loss instead.

> Indemnity generally arises from an express or implied contract. The right to indemnity may, however, arise in the absence of an agreement and by operation of law to prevent an unjust result. This may be due to the relation of the parties to one another and the consequent duty owed, e.g., master and servant, or it may be because of a significant difference in the kind or quality of their conduct, e.g., "active negligence" and 'passive negligence" or mere failure to remedy or discover the negligence.

Thus, the right of indemnity does not always arise from a contractual or statutory basis. It may arise by operation of law "[w]hen fairness and justice demand that the burden of paying for the loss be shifted to another party whose fault or responsibility is qualitatively different from the other parties." *Winter v. Smith*, 914 S.W.2d 527, 542 (Tenn. Ct. App. 1995), *appeal denied*; *see also Starr Printing Co., Inc. v. Air Jamaica*, 45 F. Supp2d 625, 632 (W.D. Tenn. 1999). Accordingly, absent a contractual obligation, implied or express, implied indemnification by operation of law requires that the party from whom indemnification is sought engaged in some related tortious conduct. *Winter*, 914 S.W.2d at 542. That party may then be required to indemnify the other parties because "wrongdoers should be liable to persons who are required to pay damages that the wrongdoers should have paid." *Id.* at 541. "This latter source of the implied right of the indemnification contemplates comparisons of the actions of joint tortfeasors. Primarily such a right would exist when one of the tortfeasors engaged in active negligence while the other tortfeasor's negligence was merely passive." *Starr Printing*, 45 F.Supp.2d at 632. Moreover, the right of implied indemnity includes attorney's fees and litigation expenses incurred to defend an action. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985) ("the right of indemnity which arises by operation of law, based upon the relationship of the parties includes the right to recover attorneys' fees and other litigation costs that have been incurred by the indemnitee in litigation with a third party.") (internal citation omitted); *accord*

*Chambers v. City of Chattanooga*, 71 S.W.3d 281, 284-85 (Tenn. Ct. App. 2002).

The Court agrees with Jenkins. A fair reading of his cross-claim against the Third Party Defendants reveals a well pleaded claim for implied right of indemnity under Tennessee common law. When the allegations of the cross-claim are construed as true, Love, an employee of Brown Petroleum and Central Oil, committed active negligence when he spilled the gasoline on the ground resulting in the environmental damage to the Property. Jenkins' negligence, assuming he was negligent, was passive in that he failed to discover Love's negligence before making a representation about the environmental soundness of the Property. Thus the qualitative nature of the Third Party Defendants' negligence is greater than that of Jenkins, and they can be held accountable to Jenkins for Love's conduct under Tennessee law.

## IV. Conclusion

For the reasons stated herein, the Court finds Jenkins' cross claim against Love, Brown Petroleum, and Central Oil sets forth sufficient facts to allege a claim of implied right of indemnity by operation of law, and thus Love's, Brown Petroleum's, and Central Oil's motion to dismiss under Fed. R. Civ. P. 12(b)(6) shall be DENIED. An appropriate order shall be entered.

ENTER:

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE